The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, with the defendant employing three or more regular employees.
2. The date of any alleged injury by accident was 23 April 1992.
3. At all times pertinent hereto, there was an employee-employer relationship between the plaintiff and the defendant.
4. Defendant is self-insured under the provisions of the North Carolina Workers' Compensation Act.
5. Plaintiff did not work for the defendant for periods of time as set forth in the document marked as stipulated Exhibit #1.
6. Defendant paid plaintiff temporary total disability compensation in an amount as set forth on the document marked as stipulated Exhibit #2, and the defendant has paid no temporary total disability compensation to the plaintiff since 7 August 1993 and continuing through the date of the hearing.
*************
Based upon the competent evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 52 years old and had completed the eleventh grade. Plaintiff's prior work history consisted of work as a clerk at Sara Lee from 1985 through 1988 and as a baker at Heritage Woods Retirement Center from 1989 through 1991. While at Sara Lee, plaintiff missed time from work due to chronic back pain and while with Heritage Woods Retirement Center, plaintiff missed four months from work due to surgery to her cervical spine. Plaintiff began working for defendant-employer on 30 December 1991 as a Dietary Assistant II, with duties primarily of preparing salads in defendant's cafeteria.
2. Prior to working for the defendant, plaintiff's medical history included back problems and depression. Plaintiff received sporadic treatment for her back and neck from her family physician Dr. William Folds beginning in 1986. Dr. Folds referred plaintiff to Dr. Michael King in 1986 and to Dr. Louise Pikula in 1987 for a myelogram. Plaintiff was diagnosed as suffering from degenerative disk disease at spinal level L5-S1 with radiculopathy. Dr. King treated plaintiff conservatively with physical therapy and kept her out of work for about six weeks in 1987.
3. In April, 1991, Dr. Folds referred plaintiff back to Dr. Pikula with complaints of neck pain radiating down her arm to her thumb and index finger. In the summer of 1991, Dr. Pikula performed an anterior diskectomy of the cervical spine and plaintiff was out of work for about four months.
4. On 23 April 1992 while working in defendant's cafeteria, plaintiff went to the cooler to get vegetables to make salads for lunch. While in the cooler, plaintiff slipped and fell to the floor landing on her right hip. Plaintiff sought treatment immediately at defendant-employer's emergency room where she reported back and hip pain. Plaintiff was referred for further treatment to Dr. David Montgomery Hunter.
5. Plaintiff's first examination by Dr. Hunter was on 29 April 1992 and at this time plaintiff had resolving bruises in the right gluteal region. According to Dr. Hunter, it takes a substantial fall to sustain bruises on the buttocks. Dr. Hunter diagnosed bruising to the right hip with mild sacral iliac strain. He treated plaintiff conservatively with anti-inflammatory medication and took plaintiff out of work for 10 days. Plaintiff's follow-up examinations continued to reveal worsening pain in the low back and sacral iliac pain. A CT scan and an MRI were ordered as well as a number of other tests. The MRI results showed there was no herniated disk and no nerve root impingement in the lower back. The CT scan showed spondylosis without evidence of spondylolisthesis. Dr. Hunter did not feel that plaintiff's pain was coming from spondylolisthesis as it was in the right sacral iliac region and in the right buttock region. The bone scan showed slight increased activity in the low back which in the opinion of Dr. Hunter could be indicative of slight trauma to the region or degenerative disk disease. Dr. Hunter diagnosed soft tissue injury and referred plaintiff to the Pain Control Clinic at Bowman Gray School of Medicine subsequently.
6. Dr. Hunter opined that plaintiff's symptoms at the time of treatment were caused by injury from the fall at work and that her incapacity for work was mainly caused by the pain in her right sacral iliac region. The spondylolisthesis which was grade one did not keep plaintiff from working.
7. Plaintiff was treated at the Bowman Gray School of Medicine Pain Control Center initially by Dr. Arias and later by Dr. Kevin Lewis Spate for persistent low back and right hip pain.
8. Plaintiff returned to light duty, part-time work for defendant on 11 January 1993 at a job with duties which included cutting vegetables for salads. Dr. Arias had previously on 19 November 1992 approved a light duty position as a filing clerk for plaintiff with lifting restricted to 10 pounds.
9. After returning to part-time work, plaintiff next returned to the Pain Control Center at Bowman Gray on 5 May 1993. Her examination confirmed the location of her pain and tenderness was the right hip and there was pain radiating down her right leg. Plaintiff was permitted to continue light duty, part-time work and to return as needed. Dr. Spate was aware on 5 May 1993 that plaintiff was under treatment for "constitutional symptoms" which included dizziness, nausea, vomiting, difficulty sleeping and difficulty in swallowing. Dr. Spate was not aware of whether these symptoms caused any incapacity for work.
10. According to Dr. Spate, if a patient has not returned to their previous functional level with adequate rehabilitation therapy within 12 months after an injury such as the one sustained by plaintiff, less than five to ten percent ever will return to their previous functional capacity. At the time Dr. Spate last saw plaintiff on 1 June 1994, she still had primarily the same pain complaints that she initially presented with at the Pain Clinic on 16 October 1992. Also, as of 1 June 1994, plaintiff's work capacity was still limited to light duty, part-time work with a lifting restriction of 10 pounds.
11. Prior to her 3 November 1993 visit with Dr. Spate, plaintiff had been diagnosed with probable multiple sclerosis, but had received no specific therapy for multiple sclerosis. Dr. Spate last treated plaintiff on 1 June 1994.
12. Plaintiff returned to Dr. Folds, her family practitioner on 24 March 1993 with complaints of nausea and a loss of appetite. Dr. Folds excused plaintiff from work beginning 25 March 1993, and on 5 April 1993 he referred plaintiff to Dr. Charles R. McMurchy, a gastroenterologist. At her first visit with Dr. McMurchy on 7 April 1993, plaintiff complained of nausea and difficulty swallowing. Dr. McMurchy performed an endoscopic examination of the esophagus, stomach and duodenum which were found to be within normal limits.
13. Plaintiff returned to work on 12 April 1993 at the same light duty job of cutting vegetables for salads and working four hours per day. The period plaintiff missed from work from 24 March through 11 April 1993 was not related to her work injury.
14. On 13 April 1993, plaintiff was referred by Dr. Folds to an otolaryngologist, Dr. R. F. Glatz. By 29 April 1993 plaintiff was complaining of dizziness and vertigo. Dr. Glatz referred plaintiff to Dr. J. Christine Dean.
15. Plaintiff first visit with Dr. Dean was on 23 May 1993. Dr. Dean diagnosed probable multiple sclerosis which in her opinion was unrelated to the injury of 23 April 1992 at work. The diagnosis of multiple sclerosis was probable because plaintiff had only some of the symptoms characteristic of multiple sclerosis. After ruling out other probable diagnoses, however, Dr. Dean decided that this was the more probable diagnosis. Although plaintiff's symptoms of multiple sclerosis were resolving, Dr. Dean did not feel that she could walk well enough to return to work and on 16 June 1993, Dr. Dean excused plaintiff from work indefinitely stating "she has recently been incapacitated and has a diagnosis of multiple sclerosis associated with vertigo (severe) and weakness." By 30 September 1993, Dr. Dean still did not have a firm diagnosis of multiple sclerosis but noted that plaintiff's symptoms were continuing. Dr. Dean continued to keep plaintiff out of work due to the slowness of her movements. As of plaintiff's last appointment with Dr. Dean on 4 April 1994, Dr. Dean still could not objectively confirm her diagnosis of multiple sclerosis.
16. The time plaintiff missed from work from 25 March 1993 through 12 April 1993 was not caused by the accident of 23 April 1992 but was caused by gastrointestinal problems. During said time, plaintiff would have been earning diminished wages in that her wage earning capacity had not returned to the pre-injury level. Plaintiff returned to work on 12 April 1993 and continued to work on a light duty, part-time basis until she was taken out of work on 1 May 1993 by her physician. Plaintiff has not worked since 1 May 1993. As of 1 May 1993, plaintiff had only retained the capacity to earn diminished wages of $128.80 per week based upon light duty, part-time work of 20 hours per week at $6.44 per hour.
17. Defendant did not accept liability on this case by the execution of a Form 21 Agreement filed with the Industrial Commission. Defendant opted to pay temporary total disability compensation to the plaintiff in an amount based upon their calculations of what plaintiff's average weekly wage should have been. The parties have now stipulated that plaintiff's weekly compensation rate is $186.00 and consequently, plaintiff's average weekly wage was $279.00.
18. There is no evidence that defendant's failure to file a Form 21 was due to an inadvertence or mistake.
****************
Based upon the foregoing stipulations and findings of fact the Full Commission enters the following
CONCLUSIONS OF LAW
1. On 23 April 1992 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
2. As a result of said injury by accident, plaintiff was temporarily totally disabled from 24 April 1992 through 2 January 1993 and is entitled to temporary total disability compensation benefits at the rate of $186.00 per week during said period. Defendants are allowed to receive a credit for any temporary total disability benefits paid to plaintiff during said period in the discretion of the Full Commission. N.C. Gen. Stat. § 97-29.
3. As a result of plaintiff's compensable injury by accident, plaintiff's wage earning capacity was reduced to $128.80 per week beginning 3 January 1993 because she had only the capacity to work light duty, four hours per day (or 20 hours per week) at an hourly rate of $6.44 per hour.
4. As a result of said injury by accident, plaintiff was temporarily partially disabled from 3 January 1993 through the date of hearing and continuing for a period not to exceed 300 weeks. Defendants are allowed to receive a credit for any temporary partial compensation benefits paid to plaintiff during this period in the discretion of the Full Commission. N.C. Gen. Stat. § 97-30.
5. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of her injury by accident. Said medical treatment shall not include any treatment provided by Dr. Dean and shall not include any treatment provided to plaintiff for gastrointestinal problems and plaintiff's problems that have been diagnosed as probable multiple sclerosis. N.C. Gen. Stat. § 97-25.
6. Defendants are entitled to a credit for any disability benefits paid to plaintiff through an employer funded disability plan.
*************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation benefits at the rate of $186.00 per week from 24 April 1992 through 2 January 1993. Thereafter, defendants shall pay to plaintiff temporary partial disability compensation in an amount equaling 2/3 of the difference between plaintiff's average weekly wages at the time of injury and the average weekly wage plaintiff was able to earn since his injury, ($279.00 — $128.80 x 2/3) until further order of the Industrial Commission, but not to exceed a period of 300 weeks from the date of injury.
2. Defendants shall pay all medical expenses incurred, or to be incurred, as a result of plaintiff's compensable injury when bills for same have been presented to defendants and approved through procedures adopted by the Commission. Said medical treatment shall not include any treatment provided by Dr. Dean and shall not include any treatment provided for plaintiff's gastrointestinal problems and plaintiff's problems that have been diagnosed as probable multiple sclerosis.
3. Plaintiff's attorney, Kathleen Sumner is hereby awarded a reasonable attorney's fee of 25% of the accrued compensation due plaintiff herein and thereafter every fourth check of any future compensation due plaintiff shall be deducted and paid directly to said attorney.
4. Defendants shall pay the costs due this Commission, including an expert witness fee in the amount of $240.00 to Dr. Speight, $240.00 to Dr. David Montgomery Hunter, $500.00 to Dr. Christine Dean, and $150.00 to Dr. William Folds.
 S/ _______________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _______________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________________________ LAURA K. MAVRETIC COMMISSIONER
BSB:md